Jose F. ROA, Plaintiff,

v.

**CITY OF BETHLEHEM, PENNSYLVANIA; County of Northampton, Pennsylvania; Passaic County New Jersey Sheriff's Department; and Various Unknown Officers and Employees of the Bethlehem Pennsylvania Police Department; Northampton County, Pennsylvania Prison; and City of Paterson, New Jersey, Defendants.**

**Civ. A. No. 89–5013.**

United States District Court, E.D. Pennsylvania.

Dec. 19, 1991.

Edward D. Reibman, Michele A. Varricchio, Allentown, Pa., for Jose F. Roa.

Jay E. Mintzer, Edelstein, Mintzer, Diamond & Sarowitz, Philadelphia, Pa., Francis M. Chmielewski, Law Offices of Christopher H. Wright, Bala Cynwyd, Pa., for City of Bethlehem, Morris Pagni and Arthur Gerlach.

M. Kelly Tillery, Leonard Tillery & Davison, Philadelphia, Pa., for County of Northampton, Pa.

Mark P. Albright, Reading, Pa., for Passaic County, New Jersey Sheriff's Dept. and Adam Heil.

Clayton H. Thomas, Jr., Clayton H. Thomas, Jr. & Assoc., Philadelphia, Pa., for City of Paterson, N.J.

## MEMORANDUM

TROUTMAN, Senior District Judge.

The instant action, previously before the Court in connection with a motion for summary judgment by the Bethlehem defendants, returns for decisions on similar motions by the remaining defendants.

As described in our earlier Memorandum, *Roa v. City of Bethlehem, et al.*, No. 89-5013 Slip op., 1991 WL 52798 (E.D.Pa. March 28, 1991), plaintiff was arrested by a Bethlehem police officer, former defendant Arthur Gerlach, when information received from the Paterson, New Jersey, police department indicated that there was an active warrant for the arrest of Jose Roa, whose last known address was the same as plaintiff's former New Jersey address.

Ultimately, it was determined that the Jose Roa arrested and detained by the Bethlehem police was not the same person sought in New Jersey. Prior thereto, however, plaintiff was arraigned before a Bethlehem district justice, committed to Northampton County Prison, and sent to Passaic County/Paterson, New Jersey, after he waived extradition before a Northampton County Court of Common Pleas judge. Finally, when he was to appear in the New Jersey court, plaintiff's claim that he was the wrong man was investigated at the direction of New Jersey court officials. The investigation disclosed that plaintiff was not the fugitive Jose Roa sought as the perpetrator of a Paterson robbery, and he was immediately released.

Plaintiff claims that his arrest and detention for thirty-four days by the various defendant entities constitutes a violation of his constitutional rights and seeks damages pursuant to 42 U.S.C. § 1983. We previously determined that the actions of the Bethlehem defendants, who relied upon information initially transmitted by the Paterson police that there was an active warrant for the arrest of Jose Roa formerly residing at 45 E. Market St., Paterson, did not violate plaintiff's Constitutional rights. We now consider the involvement of each of the remaining defendants in this unfortunate incident.

### Passaic County, New Jersey, Sheriff's Department, Adam Heil

Plaintiff concedes, after consideration of information revealed in discovery, that the Passaic County Sheriff's Department and its employee, Adam Heil, did nothing to contribute to his imprisonment. Consequently, plaintiff does not oppose the motion for summary judgment of these defendants, and judgment will be entered in their favor. (*See,* Plaintiff's Consolidated Response to Motions for Summary Judgment, Doc. # 71, at 36).

### County of Northampton, Morris Pagni

The individual defendant, Pagni, is an administrative assistant at Northampton County prison. After plaintiff's commitment to that institution to await extradition to New Jersey, Pagni became aware of

plaintiff's claim that he was wrongfully detained, interviewed him in his office and may have taken some additional action to determine the accuracy of plaintiff's claim. (*See,* Exh. E to Motions for Summary Judgment of Defendants, County of Northampton and Morris Pagni, Doc. # 66). It is clear, however, that nothing Pagni did resulted in establishing that plaintiff's claim of innocence was accurate. It appears that Pagni eventually recommended that plaintiff waive extradition in order to return to New Jersey to prove that his arrest and detention were mistaken.

Plaintiff argues that Pagni's failure to take more decisive action to aid the plaintiff, including his failure to obtain and compare identifying information relating to the plaintiff and the Jose Roa actually sought in New Jersey, and to otherwise investigate more thoroughly the plaintiff's allegations resulted in a violation of plaintiff's Constitutional rights.

■ Plaintiff's claims against Pagni and Northampton County appear to be based primarily upon Pagni's advice that plaintiff waive an extradition hearing which would have forced the New Jersey authorities to prove that plaintiff was actually the man for whom a warrant had been issued by the New Jersey courts. Plaintiff also contends that Pagni's failure to thoroughly investigate plaintiff's claim of innocence in light of testimony that he sometimes undertakes more thorough investigations of such claims reflects the lack of a consistent policy for dealing with inmates' claims of mistaken identity. Plaintiff argues that Pagni's cursory review of the plaintiff's claim of mistaken imprisonment and his advice to waive extradition and return to New Jersey demonstrated deliberate indifference to plaintiff's due process rights in that he was induced to forego the right to a hearing in the belief that Pagni was attempting to help him.

The record, however, belies plaintiff's contentions. In the first instance, plaintiff received the same advice, *i.e.,* to waive an extradition hearing in order to confront his accusers in New Jersey, via his mother, who had contacted an attorney on plaintiff's behalf. (Exh. D to Doc. # 66 at 56). Second, plaintiff consulted with a public defender prior to signing a waiver of extradition form in the presence of Judge Kimberly McFadden of the Northampton County Court of Common Pleas. The public defender stated that he consulted with the plaintiff to be certain that plaintiff understood the effect of an agreement to waive extradition, as well as the likely period of time involved if an extradition hearing had been requested, during which plaintiff would have remained imprisoned. (Affidavit of Bruce Briody, Exh. A to Reply of Defendants County of Northampton and Morris Pagni to Plaintiff's Opposition to Summary Judgment, Doc. # 72). Finally, plaintiff's statement at the waiver of extradition proceeding demonstrates that his decision to waive extradition reflects his belief that it was the most expedient way to prove that his detention was erroneous. (*Id.,* Exh. C). This belief could have arisen from the advice of two lawyers, as well as from Pagni's advice. Indeed, there is nothing in the record to indicate that Pagni's advice was particularly persuasive or convinced plaintiff to waive extradition when his inclination was to seek a hearing. Moreover, nothing in the record suggests that the advice was not in plaintiff's best interest, no matter what its origin.

Consequently, although the Court may be troubled by the apparent willingness of a non-lawyer county employee to dispense legal advice, we cannot conclude, on this record, that such advice affected plaintiff's due process rights, much less resulted in a deprivation of such rights.

■ Although plaintiff was a pre-trial detainee at the prison, rather than a convicted prisoner, and, thus, not covered by the Eighth Amendment's proscription against cruel and unusual punishment, it appears that an analysis recently employed in that context is equally applicable to the plaintiff's alleged due process violation in this case. In *Sample v. Diecks,* 885 F.2d 1099, 1110 (3d Cir.1989), the court outlined the criteria necessary to impose § 1983 liability on prison officials where an inmate is wrongfully incarcerated:

To establish § 1983 liability in this context, a plaintiff must first demonstrate that a prison official had knowledge of the prisoner's problem and, thus of the risk that unwarranted [detention] was being, or would be inflicted. Second, the plaintiff must show that the official either failed to act or took only ineffectual action under circumstances indicating that his or her response to the problem was a product of deliberate indifference to the prisoner's plight. Finally, the plaintiff must demonstrate a causal connection between the official's response to the problem and the infliction of the unjustified detention.

In this case, it appears that Pagni had knowledge of the plaintiff's claim that he was being unjustifiably detained. Because plaintiff was a pretrial detainee, however, the prison official's scope of responsibility for the imprisonment was considerably narrower than for a convict retained after he had served his sentence, as in *Sample*. Even if Pagni had positive proof that the plaintiff's claim was accurate, he had no authority to release him from custody. At most, he could have contacted court officials to alert them to the error.

In addition, plaintiff's situation was complicated by the fact that he was being detained pursuant to a New Jersey warrant. Thus, Pagni had even less access to information tending to exonerate the plaintiff than he might have if plaintiff had been arrested for a crime within Northampton County. Moreover, it is only in hindsight that it is clear that plaintiff was a victim of mistaken identity. The record indicates that at the time plaintiff was in Northampton County prison, he knew only that he was innocent of any crime in New Jersey. Even he was unaware that another man bearing the same name was the person for whom the warrant had actually been issued. Thus, we cannot conclude that under the circumstances as they appeared at the time, Pagni was deliberately indifferent to the plaintiff's plight by failing to undertake a full-scale investigation of every possible reason that could account for a wrongful detention.

Finally, plaintiff cannot establish the essential causal connection between any act or omission on Pagni's part and the duration of his detention. If anything, it appears that Pagni may have expedited plaintiff's extradition hearing by a call to the district attorney's office, resulting in an earlier return to New Jersey than would be expected in the normal course of such matters. Moreover, as noted, Pagni could not have released plaintiff without further order of the Northampton County courts, and there is absolutely no evidence to suggest that even a successful investigation by Pagni followed by an application to the court on plaintiff's behalf would have resulted in an earlier release from custody.

■ Since we conclude that Pagni's conduct did not violate plaintiff's due process or any other Constitutional right, it follows that Northampton County, Pagni's employer, is likewise exonerated of liability for any alleged inadequacy of training or lack of policy to protect plaintiff's rights. Consequently, summary judgment will be granted in favor of both of these defendants.

### City of Paterson, New Jersey

In one sense, the plaintiff's legal problems and mistaken incarceration originated with the Paterson police department.[1] As noted in this Court's prior Memorandum, plaintiff first came to the attention of law enforcement authorities on November 7, 1988, when the Bethlehem Police Department received a complaint from a Bethlehem resident. The complainant reported that she and a man she knew only as "Jose" had argued, and that she thought she might have observed a weapon in his possession. *See, Roa v. City of Bethlehem, et al.*, No. 89–5013 Slip op. (E.D.Pa. March 28, 1991). In addition to the suspect's first name, the complainant also sup-

---

**1.** We say that plaintiff's problems originated with the Paterson police department "in one sense" because if plaintiff had not been the subject of a complaint to the Bethlehem police, he would likely never have been mistakenly identified as a fugitive and subsequently apprehended. Thus, in another sense, plaintiff's problems originated with his own conduct.

plied a description of his car and the New Jersey license plate number thereof. *Id.* Pursuant to the investigating officer's request that the license plate number be checked, the Bethlehem Police Department learned that the car was registered to Jose Roa, residing at 45 E. Market Street, Paterson, New Jersey. *Id.* Additional inquiries resulted in a teletype message from the Paterson, New Jersey police department notifying the Bethlehem police that there was an active warrant for the arrest of Jose Roa of the 45 E. Market Street address. *Id.* This transmission was followed by a later teletype from the Paterson police department which stated that the address for the person sought was listed on the warrant sheets as 415 E. 34th St., and also noted that no date of birth was available for the suspect. (Plaintiff's Consolidated Response, Doc. #71, Exh. 11). It does not appear that there were any further communications between the City of Paterson and the Bethlehem police concerning Jose Roa.[2]

In support of its motion for summary judgment, defendant City of Paterson first contends that plaintiff has failed to identify a municipal policy, custom or practice which resulted in a denial of plaintiff's Constitutional rights, and, thus, argues that summary judgment is appropriate as to plaintiff's § 1983 claims against it.

■ It appears, however, that plaintiff is not actually pressing a § 1983 claim against the City of Paterson, relying instead upon the New Jersey Tort Claims Act, which plaintiff contends subjects the City to liability for negligence in performing "ministerial" acts. Plaintiff further contends that the initial furnishing of erroneous information to the Bethlehem police and, apparently, the failure to make available to the Passaic County sheriff's department and/or to the Bethlehem police all information in its files concerning the fugitive Jose Roa were "ministerial functions".

We conclude that the plaintiff's arguments are unavailing. Plaintiff has provided no persuasive authority from the New Jersey courts to support his claim against the City of Paterson on such grounds. Moreover, plaintiff's own description of a ministerial act under New Jersey law is not consistent with what occurred in this case.[3] Finally, even if we were to conclude that New Jersey law supports a cause of action

2. The record is far from clear with respect to which agency, Paterson Police Department or Passaic County Sheriff's Department, had which records, at which times, concerning the Jose Roa for whom there was an active warrant.

It appears that the robbery to which the warrant referred had occurred in Paterson, and was investigated by the Paterson police, but that the suspect was never apprehended. (*See, e.g.,* Doc. #71, Exh. 7—10). Subsequently, the case was sent to the Grand Jury, which indicted Jose Roa for the Paterson robbery.

Since the suspect failed to appear for trial, the Passaic County Superior Court later issued a warrant for his arrest, to be executed by the Passaic County sheriff's department. (*See,* Deposition of Adam Heil, attached to Doc. #71). Thus, although the Bethlehem police first contacted the Paterson police for information concerning Jose Roa and were informed of the existence of the warrant, a copy of the warrant itself had to come from the Passaic County sheriff's department.

As to additional information concerning Jose Roa, it appears that the Paterson police had none at hand when it responded to the inquiry from the Bethlehem police, other than the suspect's last known address. It also appears that the Passaic County sheriff's department had only a date of birth in addition to name and address. (*Id.*). Nevertheless, once plaintiff was returned to New Jersey and an investigator for the county prosecutor was assigned to investigate his claim of mistaken identity, the original Paterson police report, as well as a photograph of the fugitive were readily obtained from the Paterson police department. (*See,* Deposition of Vincent Moschetta, attached to Doc. #71).

No explanation was attempted, and apparently, no inquiry was made during discovery for this case, as to why the Paterson police had so little information available with which to respond to the Bethlehem Police on November 7, 1988, why there was no information available to the Passaic County sheriff's department when the warrant was issued in 1987, whether information was not transmitted between law enforcement agencies as a result of the employees thereof following established policies and procedures or failing to do so.

3. More accurately, we should say that plaintiff's description of a ministerial act under New Jersey law relating to municipal immunity is not consistent with what might have occurred here, since, as noted, there is absolutely no evidence to establish what actually did occur and whether anything done by the Paterson police department was in accordance or discordance with proper procedures.

against the City of Paterson for negligence, plaintiff has failed to adduce any evidence of negligence on the part of any Paterson employee or official. Obviously, an error was made, initially, when Paterson police reported that the fugitive sought for a crime there resided at plaintiff's last Paterson address. It appears, however, that Paterson at least attempted to correct the initial mistake. (Exh. 11 to Doc. # 71). Since it was the Passaic County sheriff's department which had the actual warrant, which subsequently communicated with the Bethlehem police concerning the apprehension of Jose Roa, and which returned him to New Jersey, it is difficult to see why plaintiff insists that Paterson was required to do any more than it did in correcting the initial error by sending a later teletype to the Bethlehem police.

Similarly, although plaintiff makes much of the fact that the Passaic County sheriff's department was told by the Paterson police department that further information concerning the fugitive Jose Roa was unavailable, that request for information occurred when the warrant was first issued, in 1987. (*See*, Deposition of Adam Heil, attached to Doc. # 71). Moreover, it is by no means clear whose responsibility it was to assure that the files were thoroughly searched for additional information on the fugitive as between Paterson and the Passaic County sheriff's department, much less that the statement concerning the lack of additional information was the result of actionable negligence or misrepresentation on the part of a Paterson official or employee.

■■■ At the summary judgment stage, lack of evidence upon which a jury could reasonably return a verdict in favor of the non-movant is fatal. When confronted by a properly supported motion for summary judgment, *i.e.*, one supported by evidence, from the sources enumerated in Rule 56, which demonstrates the absence of a genuine issue of material fact and/or lack of factual support for the claims asserted, the party opposing summary judgment is required to produce, from the same sources,

some contrary evidence which could support a favorable verdict.

■■■ Where, as here, the non-movant bears the burden of proof on an issue which is the subject of a summary judgment motion, that party must identify evidence of record sufficient to establish every element essential to the claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). *Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp.*, 812 F.2d 141 (3d Cir. 1987). To defeat summary judgment, the party opposing the motion may not rest upon the vague and amorphous argument that the record somewhere contains facts sufficient to support its claims. *Childers v. Joseph*, 842 F.2d 689 (3d Cir.1987). Instead, the party resisting the motion for summary judgment is required to identify specifically the evidence of record which supports the claim and upon which a verdict in its favor may be based. *Id.*

Plaintiff in this case has not met his burden as outlined above. Thus, regardless of the immunity issue, plaintiff's claim fails for lack of any plausible evidence of negligence on the part of the City of Paterson causally connected to plaintiff's injury. To submit to a jury a claim of negligence against the City of Paterson on the present record would be to invite impermissible speculation and conjecture. Consequently, we will enter summary judgment in favor of this defendant as well as the other remaining defendants.

*Summary*

For the foregoing reasons, outlined as to each defendant, all of their motions for summary judgment will be granted, and, therefore, judgment will be entered against the plaintiff on all claims.

The Court understands, and even, to an extent, shares, plaintiff's certain feelings of frustration and anger that he could have been mistakenly incarcerated for over a month, and can now be left without compensation for his undoubted injury. We cannot, however, conjure a remedy that the law does not provide, nor can we torture the record upon which the instant summary judgment motions are based to permit a

jury to consider, and possibly impose liability, where the facts cannot support such a decision. A jury verdict for the plaintiff on the present record could only be based upon speculative leaps, fueled by sympathy, to forge connections between the undoubtedly harsh reality that an innocent man was detained for over a month and the legal standards applicable to plaintiff's claims against the various defendants.

It may be that, at the outer reaches of plausibility, the record could support simple negligence claims against the Bethlehem police and/or the Passaic County sheriff's department, both of which had reason to know that there were slight discrepancies in personal information as between the plaintiff Jose Roa and the subject of a New Jersey fugitive warrant, and both of which could have investigated the discrepancies but did not. Similarly, Morris Pagni might be considered negligent if we could assume that there is a duty on the part of prison officials to independently investigate claims of innocence by inmates lawfully committed to their custody. The law, however, does not permit the conduct of these defendants to be evaluated, and liability imposed, under negligence standards.[4]

Moreover, even if we could disregard the legal and factual prerequisites which mandate granting the motions for summary judgment on this record and could permit a jury to consider whether any of the defendants were negligent, there is no guarantee that liability would be imposed. The facts adduced in discovery support the inference that there was no lack of due care just as plausibly as they support the opposite inference, if we evaluate the circumstances confronting each defendant as they appeared at the time rather than in light of the truth as we now understand it. Reduced to their essence, plaintiff's claims against the defendants are really based upon their failure to take extraordinary care to investigate plaintiff's protestations of innocence rather than their failure to act reasonably under the circumstances. It now appears that strenuous efforts to determine, at the earliest possible stage, that plaintiff was not actually the fugitive sought in New Jersey would have been warranted, but only because everyone now knows that plaintiff was telling the truth. The actual function of law enforcement officers, however, is not to seek to exonerate all suspects who vehemently protest their innocence, but to apprehend likely suspects and turn them over to the courts to determine their guilt or innocence. This is exactly what occurred with respect to the plaintiff in this case, who was exonerated by the New Jersey court, but who was not an unlikely suspect when apprehended and detained. Every suspect in custody is presumed innocent, but may nevertheless be detained on the basis of probable cause to believe that he is guilty of a crime, not absolute certainty that he will ultimately be convicted of the crime. Viewed in this light, it appears highly unlikely that liability would or could be imposed on any of the defendants under any theory.

---

4. With respect to the Bethlehem police defendants, the court previously determined that their conduct was protected by qualified immunity and we stand by that determination for the reasons outlined in our original memorandum and in the order of May 17, 1991, denying reconsideration.

Moreover, even if we were to reverse our decision on the qualified immunity issue, the record does not otherwise support imposition of liability against the Bethlehem police under § 1983. Although it is true that the officer who appeared at the district justice hearing had reason to know of some incongruities in information concerning the plaintiff and the person sought in the New Jersey warrant, there is no evidence that he acted intentionally, recklessly or was grossly negligent in either disregarding the discrepancies, or determining that they were of minimal import, and failing to point them out to the district justice. Indeed, the record does not even support a conclusion that the officer was consciously aware of such discrepancies.