**Tammy WOODS, Plaintiff,**

v.

**Lloyd BENTSEN, Secretary, Dept. of the Treasury, Internal Revenue Service, Defendant.**

No. 94–4202.

United States District Court, E.D. Pennsylvania.

June 14, 1995.

Tammy Woods, pro se.

David R. Hoffman, U.S. Attys. Office, James G. Sheehan, Asst. U.S. Atty. Civ. Div., Philadelphia, PA, for defendant.

### MEMORANDUM

LOWELL A. REED, Jr., District Judge.

Plaintiff Tammy Woods brought this action against defendant Lloyd Bentsen, the Secretary of the Department of the Treasury, claiming that she was treated unlawfully while employed by the Internal Revenue Service ("IRS") as a Tax Examiner in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–1 to –17 ("Title VII").

Currently before the Court is the motion by defendant for summary judgment. (Document No. 12) For the following reasons, the motion will be granted.

### I. PROCEDURAL HISTORY

Plaintiff, appearing *pro se,* filed a motion to proceed *in forma pauperis* on July 11, 1994. The Court subsequently denied the plaintiff's motion by an Order dated July 18, 1994, having found that plaintiff failed to show an inability to afford the costs of this proceeding. The Order further stated that if plaintiff failed to pay the filing fee by August 15, 1994 her civil action would be dismissed without prejudice, but that upon timely payment of the fee, the complaint would be filed and summons issued. Plaintiff then paid the requisite filing fees on August 8, 1994, and the complaint was filed with the Court on that date.[1]

Concurrent with the filing of the complaint, plaintiff also requested the Court appoint an attorney on her behalf. The Court appointed three competent counsel, each of whom subsequently declined representation. Consequently, the request was denied without prejudice on December 13, 1994.[2]

Defendant eventually responded to plaintiff's complaint by filing the instant motion for summary judgment. In this motion, defendant avers that plaintiff: 1) failed to file her civil action within the applicable time period provided by 42 U.S.C. § 2000e–16(c); and 2) failed to state a claim upon which relief could be granted under 42 U.S.C. § 2000e–16.

### II. FACTUAL BACKGROUND

Plaintiff has been employed as a Tax Examiner (GS–7) in the Adjustment Correspondence branch of the IRS in Philadelphia, Pennsylvania since February of 1985. On November 4, 1991 she filed an Equal Employment Opportunity ("EEO") complaint

---

**1.** The importance of the details concerning the chronology of the commencement of the action is shown at III.C. *infra.*

**2.** *See* discussion part III.A. *infra* for an explanation of the Court's denial to appoint additional counsel.

with the Department of the Treasury ("agency complaint"). In plaintiff's agency complaint she alleged that several of her supervisors harassed and discriminated against her based on her marriage to an African–American. The agency determined on August 10, 1993 that no racial discrimination occurred.

In April of 1994 plaintiff appealed the decision of the agency to the Equal Employment Opportunity Commission ("EEOC"). The EEOC investigated plaintiff's claim, visiting the IRS Philadelphia Service Center several times, and compiled numerous documents related to plaintiff's claim.[3] On April 20, 1994, the EEOC affirmed the agency's decision that plaintiff suffered no racial discrimination within the purview of Title VII.

Plaintiff received word of the final EEOC decision via letter on April 29, 1994, including notification of her right to file a civil action under Title VII. Seventy-two days later, on July 11, 1994, this action ensued.

## III. DISCUSSION

### A. *Appointment of Counsel*

 Following the suggestion of the Court of Appeals for the Third Circuit, this Court will explain its reasons for ultimately denying appointment of counsel. *Tabron v. Grace,* 6 F.3d 147, 158 (3d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1306, 127 L.Ed.2d 657 (1994).[4] The Court appointed three competent attorneys to represent plaintiff, however, each declined to represent plaintiff upon reviewing the case. Faced with the refusal of all three counsel to represent plaintiff, the Court determined that reasonable efforts to secure counsel had been expended. As the Court of Appeals stated in *Tabron,* "we must take note of the significant practical restraints on the district courts' ability to appoint counsel [including] ... the limited supply of lawyers who are willing to undertake such representation without compensation. We have no doubt that there are many cases in which district courts seek to appoint counsel but there is simply none willing to accept appointment." 6 F.3d at 157 (footnotes omitted). Regrettably, the case at bar is one of those "many cases."

### B. *Summary Judgment Standard*[5]

Under Fed.R.Civ.P. 56(c), summary judgment may be granted when, "after considering the record evidence in the light most favorable to the nonmoving party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Turner v. Schering–Plough Corp.,* 901 F.2d 335, 340 (3d Cir.1990). Moreover, for a dispute to be "genuine," the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Typically, a plaintiff is not entitled to rest on her pleadings when faced with a motion

---

3. As an addendum to her complaint, plaintiff filed the entire EEO investigative file compiled by the Department of the Treasury and the EEOC. This file contained numerous affidavits of IRS employees and supervisors, in addition to work evaluations, disciplinary material, EEO counseling notes, and other work-related materials.

4. While plaintiff motioned pursuant to 42 U.S.C. § 2000e–5(f)(1), and *Tabron* involved 28 U.S.C. § 1915(d), the language and purposes of the two statutes are sufficiently close to apply the analysis evinced in *Tabron* to the case at bar. The relevant portion of 28 U.S.C. § 1915(d) provides that "[t]he court may request an attorney to represent any person unable to employ counsel...." The purpose of the statute is to allow indigent plaintiffs to enjoy equality in representation when compared to those possessing adequate financial resources to protect their rights. *United States v. McQuade,* 647 F.2d 938, 940 (9th Cir.1981), *cert. denied,* 455 U.S. 958, 102 S.Ct. 1470, 71 L.Ed.2d 677 (1982). By comparison, 42 U.S.C. § 2000e–5(f)(1) provides in relevant part that "[u]pon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant...." The purpose of this statute is to ensure that plaintiffs who are unable to afford or to find counsel to represent them in a meritorious Title VII action are ably represented. *See, e.g., Castner v. Colorado Springs Cablevision,* 979 F.2d 1417, 1420–21 (10th Cir.1992); *Gadson v. Concord Hosp.,* 966 F.2d 32, 35 (1st Cir.1992).

5. Although defendant properly entitled its motion for summary judgment it requested dismissal of the complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(2). Since the Court will consider documents of record beyond the allegations of the complaint, the motion by defendant will be considered pursuant to Fed.R.Civ.P. 56.

for summary judgment, and must come forward with her own material to demonstrate the existence of a dispute. *Hovsons, Inc. v. Secretary of Interior,* 519 F.Supp. 434, 439 (D.N.J.1981), *aff'd,* 711 F.2d 1208 (3d Cir. 1983). A party resisting a motion for summary judgment must specifically identify evidence of record which supports her claim and upon which a verdict in her favor may be based. *Roa v. City of Bethlehem,* 782 F.Supp. 1008, 1014 (E.D.Pa.1991). However, a *pro se* litigant's complaint must be construed liberally, and by extension, all reasonable latitude must be afforded in the summary judgment context. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972).

 Plaintiff neglected to file a response to the instant motion within the time period prescribed by Local Rule 20(c).[6] In light of plaintiff's *pro se* status, the Court granted her an additional 30 days to respond to the motion, and notified her that failure to do so would result in this Court considering the motion uncontested.[7] Once again, plaintiff failed to respond to defendant's motion.[8] Nevertheless, this Court has undertaken a searching examination of the record, including the entire EEOC investigative file submitted by plaintiff, to determine whether summary judgment is appropriate at this time.[9]

## C. *Failure to File Within the Statutory Time Period*

 Subsection 5(f)(1) of Title VII, applicable to non-federal employees, requires that a civil action be brought within ninety days of a plaintiff receiving notification of the EEOC's final decision and a "right to sue letter." 42 U.S.C. § 2000e–5(f)(1); *Mosel v. Hills Department Store, Inc.,* 789 F.2d 251, 252–53 (3d Cir.1986). Similarly, subsection 16(c) of Title VII, applicable to federal employees, requires that an aggrieved party file a civil action within ninety days of receiving notification that the EEOC rendered its final decision. *See* 42 U.S.C. § 2000e–16(c), (d);[10] *Hornsby v. U.S. Postal Service,* 787 F.2d 87, 89–90 (3d Cir.1986); *Allen v. United States,* 542 F.2d 176, 178–179 (3d Cir.1976). This ninety day filing period is in the nature of a statute of limitations, not a jurisdictional prerequisite, and is therefore subject to equitable tolling. *Irwin v. Dept. of Veteran's Affairs,* 498 U.S. 89, 94–95, 111 S.Ct. 453, 456–57, 112 L.Ed.2d 435 (1990); *Hornsby,* 787 F.2d at 89 (citing *Zipes v. Trans World Airlines,* 455 U.S. 385, 392–98, 102 S.Ct. 1127, 1131–35, 71 L.Ed.2d 234 (1982)); *Richardson v. Diagnostic Rehabilitation Ctr.,* 836 F.Supp. 252, 254 (E.D.Pa.1993). Defendant argues that because the motion to proceed *in forma pauperis* resulted in the filing of the complaint more than ninety days after plaintiff received notice of the final EEOC decision, the Title VII claims of plaintiff are time barred. This Court disagrees.

In *Richardson,* the court faced a situation similar to the one in this case. The *pro se* plaintiff, employed by Diagnostic Rehabilitation Center ("DRC"), filed an appeal with the EEOC alleging racial discrimination in violation of Title VII. *Richardson,* 836 F.Supp.

6. This rule states that the nonmoving party is required to respond to a motion within 13 days after the service of the motion by mail, excluding weekends and holidays, or the motion may be treated as uncontested.

7. See Court order dated March 27, 1995.

8. Plaintiff has not requested an extension of time in which to respond.

9. The record developed by an agency investigating allegations of discrimination may be considered on a motion for summary judgment in an employee's subsequent district court action; if the agency record establishes that there is no genuine issue of material fact as to the absence of discrimination against a federal employee, summary judgment in the employee's district court action against the employing agency is appropriate. *Sperling v. United States,* 515 F.2d 465, 481–484 (3d Cir.1975).

10. 42 U.S.C. § 2000e–16(c), in relevant part, states that "[w]ithin 90 days of receipt of notice of final action taken by ... the [EEOC] ... an employee or applicant for employment, if aggrieved by the final disposition of his complaint, ... may file a civil action as provided in section 2000e–5 of this title"; and, 42 U.S.C. § 2000e–16(d) states that "[t]he provisions of section 2000e–5(f) through (k) of this title ... shall govern civil actions brought hereunder, and the same interest to compensate for delay in payment shall be available as in cases involving nonpublic parties."

at 253. After receiving notice of the final EEOC decision, the plaintiff submitted his complaint, accompanied by a motion to proceed *in forma pauperis,* to the Clerk of the Court within the ninety day filing period. *Id.* at 253–54. The court denied the motion, but allowed the plaintiff additional time to pay the filing fee. *Id.* The plaintiff paid the filing fee within the time period allowed by the court, but resulted in the "filing" of the civil action outside the ninety day statutory period. *Id.*

DRC argued that because the plaintiff failed to "file" within the ninety day period, the action in *Richardson* was time-barred. *Id.* at 253. The court reasoned, however, that the submission of the complaint within the ninety period, pending the outcome of the motion to proceed *in forma pauperis,* tolled the statute of limitations. *Id.* at 254. "A contrary holding would have the unjust effect of making the timeliness of any complaint submitted with a motion to proceed *in forma pauperis* depend upon the speed with which the court addresses the plaintiff's allegations of indigency." *Id.* at 254–55. Moreover, because the court led the plaintiff to believe that the statutory prerequisites for suit would be satisfied by compliance with its order, the court further tolled the statute of limitations until the end of the time period allowed by the order to pay the filing fees. *Id.* at 255 (citing *Ford v. Temple Hospital,* 790 F.2d 342, 350 (3d Cir.1986)). This Court finds the reasoning of *Richardson* persuasive in the instant case as well.

Plaintiff herein received notice of the final EEOC decision on April 29, 1994. Seventy-two days later, on July 11, 1994, plaintiff submitted her civil complaint with a motion to proceed *in forma pauperis* to this Court. Thus, like the plaintiff in *Richardson,* plaintiff Woods submitted her complaint to the Clerk of the Court within ninety days of receiving notice that the EEOC rendered its final decision. Therefore, this Court holds that the ninety day statute of limitations for filing her complaint was tolled until the denial of plaintiff's motion to proceed *in forma pauperis* on July 18, 1994.

Furthermore, the Order denying the motion to proceed *in forma pauperis* allowed plaintiff until August 15, 1994 to pay the requisite filing fee. As plaintiff paid the filing fee on August 8, 1994, and therefore, like the plaintiff in *Richardson,* tendered payment within the time period allowed by the Order, this Court concludes that the statutory filing period continued to be tolled until August 15, 1994. Accordingly, plaintiff "filed" her civil action within the statutory period prescribed by subsection 16(c) of Title VII, and the argument by defendant regarding timeliness necessarily fails.

**D. Failure To State A Claim**

Defendant claims that plaintiff's allegations fail to set forth a claim of adverse employment actions amounting to racial harassment under Title VII. This Court agrees, and though not addressed in any substantive manner by defendant, also finds that plaintiff's evidence of record fails to establish a case of discriminatory retaliation.

**1. Methods Of Proof Under Title VII**

Plaintiff claims she suffered disparate treatment based on race and retaliatory harassment for filing an EEO complaint.[11] A plaintiff may prove Title VII claims in either one of two ways: (1) by producing direct evidence of discriminatory or retaliatory treatment, or (2) by producing circumstantial evidence that would allow a reasonable fact-finder to infer discrimination or retaliation. *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 244–45, 109 S.Ct. 1775, 1787–88, 104 L.Ed.2d 268 (1989); *Mardell v. Harleysville*

11. Regarding discrimination, Title VII provides in relevant part that "[i]t shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...." 42 U.S.C. § 2000e–2(a).

Regarding retaliation, Title VII provides in relevant part that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge ... under [Title VII]." 42 U.S.C. § 2000e–3(a).

Life Ins. Co., 31 F.3d 1221, 1225–26 n. 6 (3d Cir.1994), rev'd on other grounds, —— U.S. ——, 115 S.Ct. 1397, 131 L.Ed.2d 286 (1995).

If a plaintiff cannot produce direct evidence of discrimination or retaliation, then she must sustain a Title VII claim by utilizing the procedure detailed in the McDonnell Douglas line of cases. See St. Mary's Honor Ctr. v. Hicks, —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); Texas Dep't. of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Fuentes v. Perskie, 32 F.3d 759 (3d Cir.1994). First, the plaintiff must establish a prima facie case of unlawful discrimination or retaliation. By establishing a prima facie case, the plaintiff eliminates the most common nondiscriminatory reasons for the adverse employment action and creates a presumption of discrimination. Burdine, 450 U.S. at 253–54, 101 S.Ct. at 1093–94. Once a prima facie case is established, the defendant must produce evidence that supports a legitimate, nondiscriminatory reason for his actions. Fuentes, 32 F.3d at 763 (quoting McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824). If the defendant produces such evidence, then the plaintiff may survive a motion for summary judgment only if she produces "some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or, (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes, 32 F.3d at 764. Evidence of discriminatory intent, insufficient to constitute direct evidence of discrimination, may satisfy this burden. Armbruster v. Unisys Corp., 32 F.3d 768, 781–82 (3d Cir.1994).

### 2. Disparate Treatment Based On Race

The Supreme Court recognizes that Title VII's protection embraces not only "economic" or "tangible" discrimination, such as the denial or loss of a job or promotion, but includes work environments abusive to employees because of their race as well. West v. Philadelphia Elec. Co., 45 F.3d 744,

753 (3d Cir.1995) (citing Harris v. Forklift Systems, —— U.S. ——, ——, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993)). To be cognizable under Title VII, racial harassment must be sufficiently severe or pervasive to alter the terms, conditions, or privileges of the plaintiff's employment. West, 45 F.3d at 753. (citing Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405–06, 91 L.Ed.2d 49 (1986)).

In Andrews v. City of Philadelphia the Third Circuit adopted the "totality of the circumstances" approach to determine whether a hostile work environment exists. 895 F.2d 1469, 1482 (3d Cir.1990). "A plaintiff must establish by the totality of the circumstances, the existence of a hostile or abusive working environment...." Andrews, 895 F.2d at 1482 (quoting Vance v. Southern Bell Tel. and Tel. Co., 863 F.2d 1503, 1510 (11th Cir.1989)). The relevant circumstances may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it interferes with an employee's work performance." West, 45 F.3d at 753 (citing Harris, —— U.S. at ——, 114 S.Ct. at 371). Five elements must be fulfilled by a plaintiff to establish a prima facie case of hostile work environment: "(1) the plaintiff suffered intentional discrimination because of his or her membership in the protected class; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would have detrimentally affected a reasonable person of the same protected class in that position; and, (5) the existence of respondeat superior liability." West, 45 F.3d at 753 (quoting Andrews, 895 F.2d at 1482).

Viewing the evidence in the light most favorable to the plaintiff, the only evidence of record indicating discriminatory motive is:

"[A]t the meeting on Oct. 15, 1991 ... Shirley Pollitt was verbally abusing me ... [and] mentioned the fact that my husband is black and questioned me.... Shirley Pollitt also made a statement that she admitted to talking about me a week earli-

er, in front of my desk area making remarks such as; 'I can't stand her,' 'why is she looking at me all the time,' and 'I wish I could—.' These remarks were made to a couple of her friends that were with her." Woods Aff. at 53.

" 'Suttle' [sic] hints were given by my supervisor, Romona Haregust, to 'be careful and watch out for what I do because [plaintiff] was being constantly watched.' I am the only one who dares to take breaks and lunches with [plaintiff], or to be seen talking to her." Russell Aff. at 75.

"I ... filed a discrimination complaint against management in 10/91, due to a racial statement made against me concerning my husband being black." Plaintiff's Request for Appointment of Attorney.

In sum, therefore, plaintiff has produced evidence of only one racial epithet during the relevant time period.[12] Although plaintiff may have suffered some amount of discrimination based on interracial association,[13] a single racially charged comment cannot be considered "pervasive and regular." As Justice O'Conner stated in *Harris*, the "mere utterance of an ... epithet which engenders offensive feelings in a employee does not sufficiently affect the conditions of employment to implicate Title VII." 114 S.Ct. at 370 (internal quotations and citations omitted). As plaintiff failed to produce evidence

sufficient to establish a prima facie case of racial harassment under Title VII, the motion for summary judgment will be granted on this claim.

### 3. Retaliation For Filing An EEO Complaint

■■■ To establish a prima facie case of discriminatory retaliation, thereby shifting the burden of production to the defendant, a plaintiff must demonstrate that: "(1) she engaged in conduct protected by Title VII; (2) the employer took adverse action against her; and (3) a causal link exists between her protected conduct and the employer's adverse action." *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 201 (3d Cir.1994) (internal quotation marks omitted); *Nixon v. Runyon*, 856 F.Supp. 977, 988 (E.D.Pa.1994). Regarding the third element, temporal proximity of the adverse action to a plaintiff's protected activity can give rise to an inference of causation sufficient to satisfy plaintiff's burden. *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir.1989), *cert. denied*, 493 U.S. 1023, 110 S.Ct. 725, 107 L.Ed.2d 745 (1990). Although the Third Circuit has addressed time periods of only two days or two years,[14] other courts generally hold that if at least four months pass after the protected action without employer reprisal, no inference of causation is created.[15] This Court chooses to

---

12. The other "evidence" proffered by the plaintiff in support of her claim consisted of conclusory allegations, both in affidavit and non-affidavit form. A nonmoving party may not successfully oppose a summary judgment motion by simply replacing "conclusory allegations of the complaint ... with conclusory allegations of an affidavit." *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990). Rather, the nonmoving party must offer specific facts contradicting the facts averred by the movant which indicate that there is a genuine issue for trial. *Id.* at 888, 110 S.Ct. at 3188.

13. Title VII prohibits discrimination based upon interracial association. *See Sperling v. United States*, 515 F.2d 465 (3d Cir.1975), *cert. denied*, 426 U.S. 919, 96 S.Ct. 2623, 49 L.Ed.2d 372 (1976) (holding that § 2000e–16 of Title VII applied to claim by white federal employee that he suffered racial discrimination in response to his representation of black fellow employee). *See also Stacks v. Southwestern Bell Yellow Pages, Inc.*, 27 F.3d 1316, 1327 n. 6 (8th Cir.1994); *Patrick v. Miller*, 953 F.2d 1240, 1250 (10th Cir.

1992); *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1316–17 (7th Cir.1989) (Cudahy, J., concurring); *Parr v. Woodmen of the World Life Ins. Co.*, 791 F.2d 888 (11th Cir.1986).

14. *See Robinson v. S.E. Pa. Transp. Authority, Red Arrow*, 982 F.2d 892, 895 (3d Cir.1993) (indicating doubt that discharge could be causally linked to an employee's protected action taken almost two years previously absent an intervening pattern of antagonism and retaliation); *Jalil*, 873 F.2d at 708 (interval of two days between employer receiving notice of plaintiff's EEOC charge and discharge of plaintiff sufficient to create an inference of causation under Title VII).

15. *See, e.g., Hughes v. Derwinski*, 967 F.2d 1168, 1174 (7th Cir.1992) (disciplinary letter issued four months after discrimination charge filed not causally linked to employer action); *Cooper v. City of North Olmsted*, 795 F.2d 1265, 1272 (6th Cir.1986) (discharge four months after filing of discrimination charge not causally linked to adverse employer action); *Lees v. Case–Hoyt Corp.*, 779 F.Supp. 717, 727 (W.D.N.Y.1991) (suspen-

follow these courts in concluding that an adverse employment action, occurring a significant period of time following the exercise of rights afforded under Title VII, does not create an inference of causation in the absence of other evidence. Furthermore, this Court also concludes that the filing of an EEO complaint is the reference point for measuring the germane interval of time in Title VII retaliation claims.[16]

▪ Plaintiff clearly engaged in activities protected by Title VII by filing an EEO complaint on November 4, 1991 and by filing an appeal to the EEOC in April of 1994. Additionally, viewing the evidence in the light most favorable to plaintiff, she likely suffered adverse employment action at sometime after the protected activity as well.

On April 22, 1992, plaintiff received a quarterly evaluation from her unit manager, Bessie Farmer, ranking plaintiff as a "5" in "quality" and a "1" in "quantity."[17] Previously, in an annual evaluation dated October 30, 1991, plaintiff received ratings of "4" in all categories, with the exception of one "3" in quantity. Although it is unclear whether the quarterly evaluation was permanent, the court will consider the adverse quantity rating as sufficient to sustain the plaintiff's burden of production to show that she suffered an adverse employment action. Also, allowing due latitude for plaintiff's *pro se* status, some evidence of record indicates that adverse employment actions may have occurred at approximately the same time as the EEOC appeal of the agency decision. Plaintiff, in an affidavit signed July 8, 1994, stated that she "recently" was suspended from work for five days, had a "poor" work evaluation written, and that "internal security" investigated her husband. Here follows an analysis of whether plaintiff has produced sufficient evidence to prove the necessary causal link.

▪ With respect to the EEO complaint filed in November of 1991, well over five months passed before the adverse employment action occurred on April 22, 1992. Furthermore, plaintiff produced no other evidence of an intervening pattern of antagonism and retaliation[18] that would support an inference of a causal link. While there is evidence supporting an inference that plaintiff may have been "watched" more closely,[19] even if considered as employer activity it is insufficient as a matter of law to constitute a pattern of antagonism and retaliation under Title VII. Being "watched," without more, is not proof of antagonism or retaliation.

Turning to the EEOC appeal of April, 1994, plaintiff has failed to establish any causal link between this protected activity and any adverse employer action as well. As this Court noted *supra*, the reference point for measuring temporal proximity is the filing of the EEO complaint. Thus, any employer action after plaintiff elected to appeal the Department of the Treasury's decision, necessarily occurred at least 29 months following plaintiff's original complaint. This expanse of time, under the factual circumstances presented here, is too lengthy to allow an inference of causation in the absence of other evidence. However, even if the EEOC appeal reset the "clock," so to speak, plaintiff still failed to sustain her burden of proof regarding a causal link. The affidavit of plaintiff dated July 8, 1994 fails to establish whether the adverse employment actions occurred before or after her appeal, and moreover, whether her employer or supervisor was even aware of her EEOC appeal. *See Manoharan v. Columbia Univ. College of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir.1988) (holding that an employer must be aware of plaintiff's protected activity to

sion four months after filing of discrimination complaint not causally linked to adverse employer action); *Fitch v. R.J. Reynolds Tobacco Co.*, 675 F.Supp. 133, 138 (S.D.N.Y.1987) (low evaluation seven months after filing of discrimination charge not causally linked to employer action).

16. *See* cases cited in notes 14 & 15 *supra.*

17. Plaintiff was evaluated on a scale of "1" to "5," 1 being the lowest and 5 the highest.

18. *See Robinson,* 982 F.2d at 895.

19. "[S]uttle [sic] hints were given by my supervisor, Romona Haregust, to 'be careful and watch out for what I do' because [plaintiff] was being watched constantly." Williams affidavit at 75. "[W]hen I am seen talking to [plaintiff] all eyes are on us." Russell aff. at 81.

make out a prima facie case of retaliation); *Gordon v. National Railroad Passenger Corp.,* 564 F.Supp. 199, 204 (E.D.Pa.1983) (holding that plaintiff failed to show that his dismissal was causally linked to protected activities because the employer was unaware of those protected activities). Thus, despite having satisfied the first two elements of the test, plaintiff has failed to produce sufficient evidence to establish a causal link between her protected activities and the adverse employment actions of the IRS. Consequently, plaintiff failed to establish a prima facie case of Title VII retaliatory conduct, and the motion for summary judgment in favor of defendant will be granted on this claim also.

## IV. CONCLUSION

Based on the foregoing discussion, the motion of defendant for summary judgment shall be granted.

An appropriate order follows.

### *ORDER*

**AND NOW,** this 12th day of June, 1995, upon consideration of the motion of defendant Lloyd Bentsen, Secretary, Dept. of the Treasury, Internal Revenue Service, for summary judgment (Document No. 12) and the pleadings, affidavits, and other discovery of record, having found that there are no genuine issues of material fact and that defendant is entitled to judgment in his favor as a matter of law for the reasons set forth in the foregoing memorandum, it is hereby **ORDERED** that the motion for summary judgment is **GRANTED.**

**JUDGMENT IS HEREBY ENTERED** in favor of defendant Lloyd Bentsen and against plaintiff Tammy Woods.

This is a **FINAL JUDGMENT** on all claims.