

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-14-2004

# Urey v. Grove Cty College

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2753

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Urey v. Grove Cty College" (2004). *2004 Decisions.* Paper 839.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/839

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 03-2753

_____

ALICE UREY,

Appellant

v.

GROVE CITY COLLEGE

_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 01-cv-02024)
District Judge:  Honorable Joy F. Conti

_____

Submitted Under Third Circuit LAR 34.1(a)
April 13, 2004

Before:  RENDELL, COWEN and LAY*, Circuit Judges.

(Filed : April 14, 2004)

_____

OPINION OF THE COURT

_____

_____

*Honorable Donald P. Lay, Senior Circuit Judge for the Eighth Circuit, sitting by
designation.

LAY, <u>Circuit Judge</u>.

Alice Urey appeals the District Court's grant of summary judgment in favor of Grove City College on her claims of retaliatory discharge. We will affirm.

**BACKGROUND**

From 1989 until her termination on April 5, 2001, Alice Urey worked as a housekeeper for Grove City College (the "College"), a private college located in Western Pennsylvania. Although Ms. Urey appears to have performed her job duties without incident during her first ten years of employment, the record reveals several instances of insubordination for which Ms. Urey was subjected to disciplinary action beginning in the spring of 1999.

On May 12, 1999, Ms. Urey received a verbal warning from Thomas Gregg, the Vice President of Operations for the College, stemming from a confrontation with her immediate supervisor over a job performance evaluation. Gregg reassigned Ms. Urey to another supervisor and cautioned her not to make any attempt at retaliation against her former supervisor.

On May 24, 2000, Ms. Urey received a written warning after she refused the requests of her supervisor to leave her workspace and attend a meeting with Gregg. Instead, Ms. Urey stressed that if Gregg wished to talk to her, he would have to come to see her. The purpose of this meeting was to discuss complaints made by Ms. Urey's

2

immediate supervisor that Ms. Urey had recently yelled at her regarding work assignments and the employee dress code.

On April 4, 2001, Ms. Urey walked out of a meeting with Gregg, despite being told that the meeting was not over and that her refusal to remain would be viewed as insubordination. The purpose of this meeting was to discuss a complaint made by Ms. Urey's immediate supervisor that Ms. Urey had openly accused her of being lazy during a recent employee meeting. The following day, Ms. Urey was terminated.

Following her termination, Ms. Urey filed suit against the College, alleging claims of retaliation under various statutory provisions[1] and the Pennsylvania common law. Ms. Urey alleged that she was terminated because she engaged in the following activities: (1) giving favorable deposition testimony on April 24, 2000, in support of a co-worker's claim of discrimination against the College; (2) filing her own external charge of discrimination against the College in May of 2000; and (3) filing several claims seeking workers' compensation benefits due to injuries suffered on the job.

### DISCUSSION

We note at the outset that although Ms. Urey's claims of retaliation are brought

---

[1]Ms. Urey alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*; and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. Ann. § 951, *et seq.*

under various sources, the analytical framework for each is identical.  *See Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002) (analysis for Title VII, ADEA, and PHRA retaliation claims identical); *Landmesser v. United Air Lines, Inc.*, 102 F. Supp. 2d 273, 277 (E.D. Pa. 2000) (analysis for common law and Title VII retaliation claims identical).  In order to establish a *prima facie* case of retaliation, a plaintiff must show: (1) that he or she engaged in a protected activity; (2) that his or her employer took an adverse employment action; and (3) a causal link between the two.  *See Fogleman*, 283 F.3d at 567-68; *Landmesser*, 102 F. Supp. 2d at 277-78.

The College concedes that each of Ms. Urey's alleged activities were protected.  Similarly, the College concedes that its act of firing her constituted an adverse employment action.  The dispute between the parties concerns whether Ms. Urey has adduced sufficient evidence to establish the requisite causal link between these two instances, thus preventing the entry of summary judgment in favor of the College.  One method for establishing the causation necessary to make out a *prima facie* case of retaliation is to demonstrate that the adverse employment action followed closely upon the heels of a protected activity.  *See Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997) (noting that such "temporal proximity" is "an obvious method by which a plaintiff can proffer circumstantial evidence" of discriminatory intent).

Generally, it can be said that "if at least four months pass after the protected action without employer reprisal, no inference of causation is created." *Woods v. Bentsen*, 889

F. Supp 179, 187 (E.D. Pa. 2000); *see also id.* n.15 (collecting cases). Applying this standard to the undisputed facts, we hold that Ms. Urey has failed to raise an inference of causation. Her act of providing favorable deposition testimony in a co-worker's suit occurred on April 24, 2000–nearly one year before she was terminated. The same holds true for her act of filing a charge of discrimination with the EEOC, which took place in May of 2000. Finally, the last instance in which Ms. Urey filed a claim for workers' compensation benefits occurred on October 4, 2000–six months before her termination.[2] We hold such a temporal link is too attenuated to support any inference of improper motive.

Temporal proximity, while certainly the most common, is not the exclusive method of raising an inference of causation. As this court stated in *Kachmar*, "circumstantial evidence of a 'pattern of antagonism' following the protected conduct can also give rise to the inference." *Kachmar*, 109 F.3d at 177 (citation omitted). Ms. Urey argues that she has demonstrated such a pattern, alleging that following her protected activities, her supervisors increasingly began to nitpick her work, subject her to unreasonable deadlines, and criticize her appearance. However, the record shows the conduct of which Ms. Urey

---

[2]We agree with the District Court that under *Weston v. Pennsylvania*, 251 F.3d 420 (3d Cir. 2001), Gregg's verbal and written warnings to Ms. Urey did not amount to an adverse employment action. The record demonstrates that Ms. Urey did not have her hours or type of work changed, nor did she receive a decrease in wages. Therefore, these warnings did not "effect a material change in the terms or conditions of [her] employment." *Id.* at 431.

now complains was taken in response to her own acts of insubordination, including her failure to adhere to the College's dress code and demonstrate respect for her supervisors. We hold the conduct "did not portend any future retaliation," but instead amounted to "discrete responses to particular occurrences." *Weston*, 251 F.3d at 432.

## CONCLUSION

The judgment of the District Court will be AFFIRMED.