**Arthur MANOHARAN, M.D.,**
**Plaintiff–Appellant,**

v.

**COLUMBIA UNIVERSITY COLLEGE**
**OF PHYSICIANS & SURGEONS,**
**Defendant–Appellee.**

**No. 243, Docket 87–7464.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 30, 1987.

Decided March 10, 1988.

Joseph J. Garcia, New York City, for plaintiff-appellant, with whom Vladeck, Waldman, Elias & Engelhard, P.C. and Debra L. Raskin were on the briefs.

Charles B. Updike, New York City, for defendant-appellee, with whom Schoeman, Marsh, Updike & Welt and Thomas J. Dolan were on the briefs.

Before PIERCE, MINER and DAVIS,* Circuit Judges.

* Honorable Oscar H. Davis, Circuit Judge, United States Court of Appeals for the Federal Circuit, sitting by designation.

DAVIS, Circuit Judge:

Plaintiff-appellant Dr. Arthur Manoharan appeals the judgment of the United States District Court for the Southern District of New York holding (after a bench trial) that the Columbia University College of Physicians and Surgeons (Columbia) did not violate Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–3(a), when it terminated his employment. We affirm.

## I. *The "Hard Facts"*

Appellant was employed by Columbia as Medical Director of Harlem Hospital Center ("Hospital"), under an affiliation agreement with the Hospital, from October, 1980 until his employment was involuntarily ended on June 30, 1983. Before his appointment, he had held faculty positions at the University of Hawaii and Boston University, where he had taught in the Schools of Medicine and Public Health; and he had had various international positions in the area of public health. As Medical Director, he had responsibility for administering the professional services at the Hospital. This included responding to the administrative needs of the directors of the medical departments; coordinating Columbia's responsibilities under an affiliation agreement (between the University and the Hospital) with the Executive Director of Harlem Hospital and with other officials of New York City's Health and Hospitals Corporation; and assisting the administrative medical training programs at the Hospital.

Appellant contends that Columbia terminated him in retaliation by Columbia for his criticism of the hiring procedures used by Columbia to fill a newly-created position— Assistant Director of Administrative Services—in the affiliation program. In September 1982, after approval of the creation of the Assistant Director position, and its advertisement, interviews were held and Ms. Ellen Giesow was selected. Ms. Giesow was already employed as the representative of Columbia's personnel office assigned to the Hospital under the affiliation agreement.

On October 8, 1982, at appellant's request, Dr. Bernard Challenor, who was then Associate Dean for Hospital Affairs at Columbia and Dr. Manoharan's immediate supervisor, wrote to Columbia's Director of Equal Employment Opportunity objecting on affirmative action grounds to the selection of Ms. Giesow. Among the objections raised in the letter was that the Medical Director (Dr. Manoharan) had not interviewed candidates for the position. The letter also implied that the Medical Director expressed dissatisfaction with the selection of Ms. Giesow and with the manner in which she had been recruited.

Columbia then redid the search and selection process for the Assistant Director position, allowing Drs. Challenor and Manoharan to interview the candidates, but assigning the authority for the final selection to Associate Dean Cheryl Rice. Once again, on June 27, 1983, Ms. Giesow was selected. Three days later, when appellant learned of Ms. Giesow's appointment, he visited Dr. Thomas Q. Morris, Vice Dean of the Faculty of Medicine at Columbia, to object to the selection. Dr. Morris, changing the subject, advised appellant that a decision had been made to lay him off because of a restructuring of the affiliation contract and Dr. Morris handed him a letter of discharge. Appellant asked Dr. Morris to withhold the letter until the next day when he said he would return. Appellant did not return until July 11th when he was again given the letter.

After his termination from the Medical Director's position, appellant continued to receive his regular salary until September 30, 1983; and until the spring of 1984, he continued to teach at the Columbia School of Public Health, but at sharply reduced pay.

After satisfying the appropriate administrative prerequisites with the Equal Employment Opportunity Commission and the New York State Division of Human Rights, Dr. Manoharan filed an employment discrimination suit against Columbia, in United States District Court, claiming retali-

atory discharge in violation of section 704(a) of Title VII of the Civil Rights Act of 1964. Following a four-day trial before Judge Goettel, judgment was entered for Columbia.

## II. *Prima Facie Case*

Section 704(a) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a) (1982), provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter...." The objective of this section is obviously to forbid an employer from retaliating against an employee because of the latter's opposition to an unlawful employment practice. Section 703(a) of Title VII defines "unlawful employment practice" in this way: "It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin...." 42 U.S.C. § 2000e–(2)(a)(1) (1982).

Appellant claimed that Columbia terminated his employment as Medical Director because of his objections to the appointment of Ms. Giesow to her new position as well as to the method of her selection. He contended that Ms. Giesow, who is white, was chosen over qualified black and other minority applicants. The district court ruled for Columbia, holding that appellant had failed to establish a prima facie case of retaliatory discharge in violation of section 704(a). (The court also held that, even if appellant had established a prima facie case, Columbia had laid off appellant for a combination of legitimate, nondiscriminatory, nonpretextual reasons.)

To make out a prima facie case of retaliation, an employee must show that the employee was engaged in protected activity; that the employer was aware of that activity; that the employee suffered adverse employment decisions; and that there was a causal connection between the protected activity and the adverse employment action. *DeCintio v. Westchester County Medical Center,* 821 F.2d 111, 115 (2d Cir.1987); *Grant v. Bethlehem Steel Corp.,* 622 F.2d 43, 46 (2d Cir.1980). To prove that he engaged in protected activity, the plaintiff need not establish that the conduct he opposed was in fact a violation of Title VII. *Davis v. State University of New York,* 802 F.2d 638, 642 (2d Cir.1986). However, the plaintiff must demonstrate a "good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *See, e.g., Abel v. Bonfanti,* 625 F.Supp. 263, 267 (S.D.N.Y.1985); *Francoeur v. Corroon & Black Co.,* 552 F.Supp. 403, 412 (S.D.N.Y.1982).[1] Proof of the causal connection can be established indirectly by showing that the protected activity was closely followed in time by the adverse action. *See Davis,* 802 F.2d at 642.

The district court held that a prima facie case of retaliation can be established only with respect to an "unlawful employment practice" which it defined as being "discriminatory against a *particular* individual with respect to his compensation terms, conditions or privileges of employment because of such individual's race, color, religion, sex or natural origin" (emphasis added). We need not decide whether the characterization is correct since Judge Goettel properly found that Dr. Manoharan failed to establish a prima facie case.

Appellant argues that the court erroneously ruled that he had not met his burden. We do not agree. We see no reason to disturb the district court's implicit finding that Dr. Manoharan did not prove a good faith, reasonable belief that the

1. *See also Jurado v. Eleven–Fifty Corp.,* 813 F.2d 1406, 1411 (9th Cir.1987); *Love v. Re/Max of America,* 738 F.2d 383, 385 (10th Cir.1984); *Rucker v. Higher Educ. Aids Bd.,* 669 F.2d 1179, 1182 (7th Cir.1982); *Sisco v. J.S. Alberici Constr. Co.,* 655 F.2d 146, 150 (8th Cir.1981); *Payne v.* *McLemore's Wholesale & Retail Stores,* 654 F.2d 1130, 1137–40 (5th Cir. Unit A Sept. 1981), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1630, 71 L.Ed.2d 866 (1982); *Parker v. Baltimore & Ohio R.R.,* 652 F.2d 1012, 1020 (D.C.Cir.1981); *Monteiro v. Poole Silver Co.,* 615 F.2d 4, 8 (1st Cir.1980).

appointment of Ms. Giesow constituted an unlawful employment practice. The court found appellant's evidence unpersuasive that Columbia had acted in a discriminatory manner toward any of the minority candidates for the position. The fact that a white woman was chosen from a pool of candidates that included several black individuals does not by itself indicate that Columbia's selection process was racially discriminatory. Even though Dr. Manoharan was aware that there were several minority applicants, and complained that they should be given greater consideration in the selection process, we agree with Judge Goettel that appellant's objections at the time neither pointed out discrimination against particular individuals nor discriminatory practices by Columbia, as they were alleged. The essence of appellant's complaints, at the time they were made, was that Columbia was not pursuing affirmative action goals in this selection process. Since section 704(j) of Title VII states that affirmative action in employment practices is not required by Title VII, 42 U.S.C. § 2000e-2(j) (1982), an employer's failure to follow its own voluntary affirmative action program cannot, by itself, constitute an unlawful employment practice within the language of section 703(a)(1). Therefore, appellant's complaints about Columbia's selection process for the new Assistant Director of Administrative Services position were directed at something that, as it was alleged, is not properly within the definition of an "unlawful employment practice." Furthermore, the characteristics of the applicant selected, Ms. Giesow, as alleged by appellant, weigh heavily against even appellant's contention that Columbia was derelict in its attention to affirmative action considerations. The district court found that Ms. Giesow's selection satisfied two goals of Columbia's affirmative action program—hiring women and hiring applicants from within the university.[2]

The district court's determination that appellant failed to meet his burden of proof of a prima facie case of retaliation is a finding of fact.[3] As such, it will not be overturned unless it is shown to be clearly erroneous. *O'Connell Machinery Co. v. M.V. Americana*, 797 F.2d 1130, 1133 (2d Cir.1986); *Lyddan v. United States*, 721 F.2d 873, 875 (2d Cir.1983), *cert. denied*, 467 U.S. 1214, 104 S.Ct. 2656, 81 L.Ed.2d 363 (1984); Fed.R.Civ.P. 52(a). Because we do not perceive any error, we decline to disturb Judge Goettel's findings regarding proof of the prima facie case.

### III. *Pretext*

Appellant also contests the district court's decision that, even if Manoharan had established a prima facie case of retaliatory discharge, Columbia laid him off for a combination of legitimate, nondiscriminatory reasons. Evidence was introduced that (a) administrative reorganization of the Harlem Hospital called for consolidation of plaintiff's position with that of another under the title of "Associate Dean for Affiliated Hospitals"; (b) significant cost savings could be achieved by this consolidation during a period of financial retrenchment; and (c) some doctors at the hospital believed appellant's performance as Medical Director to have been inadequate. The district court expressly found that this combination of reasons "was not a pretext for any alleged desire to retaliate for objections raised about the appointment of Ms. Giesow."

Appellant argues that the court erred in assigning him the burden of proving that "but for" his objections to the selection of Ms. Giesow and the selection process he would not have been laid off. However, as this court indicated recently in *Dominic v. Consolidated Edison Co.*, 822 F.2d 1249, 1260 (2d Cir.1987) (panel statement on petition for rehearing), the ultimate burden of persuading the factfinder that a retaliatory

---

**2.** The third of Columbia's affirmative action goals was the hiring of qualified minority candidates.

**3.** In its ultimate findings of fact the district court found that the "plaintiff objected to Miss Giesow's appointment primarily on personal grounds. He also objected because he believed that his approval of the application should have been required."

motive is a "but for" cause of the adverse employment action falls on the plaintiff. Manoharan failed to carry that burden.[4]

Manoharan also urges that the district court committed reversible error in finding that Columbia's asserted legitimate, nondiscriminatory reasons for terminating appellant were not pretextual. We find no clear error in the district court's analysis of the pretext issue. After carefully weighing the evidence, Judge Goettel concluded that the combination of Columbia's three stated reasons—that administrative reorganization warranted consolidation of appellant's position with that of another under the title of "Associate Dean for Affiliated Hospitals"; that significant cost savings could be achieved by this consolidation during a period of financial retrenchment; and that some doctors at the Hospital believed appellant's performance as Medical Director to have been inadequate—were not pretextual. This was a reasonable evaluation of the evidence which we cannot upset.[5]

The judgment of the district court is affirmed.

---

4. Judge Goettel found that "Dr. Manoharan would have been laid off, regardless of any objections he raised about [Ms. Giesow's] appointment."

5. Judge Goettel expressly found that "Columbia never had any desire to retaliate for objections raised over the appointment of Miss Giesow." Dr. Morris had testified that appellant's objection to the appointment of Miss Giesow "played absolutely no role" in his decision to terminate the position of Medical Director in general and appellant's tenure in that position in particular.