[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this case the plaintiff, Leslie Moore, seeks damages from her former employer, the defendant Consumer Credit Counseling Services of Connecticut, Inc. ("CCCS"), for breach; of an employment contract, violation of Connecticut General Statutes § 31-290 (a), and intentional infliction of emotional distress.
After a trial the court finds the following facts. Leslie Moore began working for CCCS in 1989. CCCS is a non-profit consumer counseling service which is funded in part by donations from local businesses and receives fees from its clients. She was originally hired as a part time debt counselor and in a short period of time was promoted to branch: manager of the Hartford office. Moore remained as branch manager in Hartford until February 1992 when she became branch manager of a newly opened Willimantic branch. CCCS admitted at trial that there were no problems with Moore's performance as manager in Hartford. CT Page 7056
The Willimantic office was opened on a test basis. Moore helped select and train the staff for the new office, negotiated the lease for the office and purchased furniture for the office Beverly Tuttle, the president of CCCS, told Moore that the Willimantic office would be evaluated after one year, and that if the office was not successful, Moore would return to her job in Hartford.
In August the only full time debt counselor in the Willimantic office was transferred to Hartford. A debt counselor reviewed a client's debts and income, determined whether the client could enter into a viable payment plan, and set up that payment plan. CCCS received a portion of each client payment as a fee. Therefore, the greater the number of clients who were making payments pursuant to a payment plan, the more funding CCCS received. Moore was concerned that the transfer of her only counselor would decrease the profitability of the Willimantic office at a time when the office was still struggling to become profitable. She repeatedly expressed those concerns to Tuttle.
Moore met with Tuttle on August 12, 1992 to discuss the Willimantic office and the transfer of the counselor. At this meeting Tuttle recognized that Moore was under great stress and suggested that Moore see a counselor. Tuttle gave Moore the name of a counselor at that time. However, Moore was aware that the counselor suggested, Alan Shiffer, was a friend of Tuttle and she determined that she would prefer to chose her own counselor.
After the August 12th meeting with Tuttle, Moore continued to experience much work-related stress because she was extremely concerned that the Willimantic office would be a "failure". On August 28, 1992, after talking to the Workers' Compensation Commissioner's Office, Moore filed a claim for workers' compensation based on job related stress. anxiety and depression.
Upon receipt of the claim, Tuttle sent Moore a memorandum dated September 2, 1992 requesting information relating to the claim. The memorandum (Plaintiff's Ex. 8) requested factual information concerning the claim such as the date and time of the injury and a description of the injury. It also requested a statement from Moore's physician oral therapist concerning her ability to work and a personal statement from Moore as to her ability to work. In the aforementioned memorandum Tuttle instructed Moore to provide all of the information requested no CT Page 7057 later than the close of business on September 3, 1992. It was not clear when Moore received that memorandum. If she received it a day after it was written, she had only a few hours to provide Tuttle with a substantial amount of information. The time for Moore's compliance was clearly unreasonable.
After filing her workers' compensation claim, Moore continued to work and did not miss any time due to her stress. However, Moore continued to experience considerable stress, depression and anxiety which were related to her job.
A CCCS staff meeting occurred in Hartford on October 6, 1992. At that time it was announced that CCCS was doing away with branch managers. Some of the former branch managers were given equivalent positions, but Moore was demoted to counselor.
On October 8, 1992 Moore's physician advised her to stay out of work for three weeks due to her work-related stress. Moore gave CCCS notice that she had to stay out of work. On October 9, 1992, Tuttle decided to eliminate the Willimantic branch. Moore's employment was also terminated as of that date. Several days later Moore was served with the termination notice by a sheriff as well as by certified mail. After Moore's termination CCCS hired other counselors, but they never offered Moore a job. Tuttle testified that CCCS had never had an employee who had filed a workers' compensation claim.
Tuttle testified that her decision to open a Willimantic Branch office on a trial basis, was made in conjunction with input from the board of directors of CCCS. However, she unilaterally decided to close the Willimantic Branch.
Connecticut General Statute 31-290a provides in pertinent part:
 No employer shall discharge, or cause to be discharged, or in any manner discriminate against any employee because the employee has filed a claim for workers' compensation benefits or otherwise exercised the rights afforded to him pursuant to the provisions of the workers compensation statute. [emphasis added]
To prevail under the statute, the plaintiff has the burden of proving by a fair preponderance of the evidence, 1) that she exercised rights under workers' compensation, and 2) that the defendant discriminated against her for exercising those rights. CT Page 7058
Connecticut courts have applied the shifting burdens established in McDonnell Douglas Corp. v. Green, 411 U.S. 792,802-4, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); Ford v. Blue Cross Blue Shield of Connecticut, Inc., 216 Conn. 40, 53, 578 A.2d 1054
(1990). The plaintiff must establish: 1) that she engaged in protected activity, i.e. filed a claim or exercised rights under Workers' Compensation; 2) that she was discriminated against; and 3) that the discrimination raises an inference of a discriminatory motive
Once the plaintiff has presented a prima facie case, the burden shifts to the defendant to produce evidence of a legitimate, non-discriminatory reason for its actions. Ford v.Blue Cross, supra at 54. If the defendant meets its burden of production, then the presumption is rebutted, and the plaintiff must establish that a discriminatory reason more likely motivated the employer or by showing that the employer's reason is a pretext.
Leslie Moore filed a claim for compensation [Ex. P] and exercised rights under the Workers' Compensation Act. The timing of her termination within days of her medically ordered leave of absence is sufficient to permit an inference of a discriminatory motive. Manoharan v. Columbia U. Col. of Phy. Surgeons,842 F.2d 590, 593 (2nd Cir. 1988).
The defendant's claim that Moore's termination was merely the product of a business decision to close an unprofitable branch is unconvincing. Prior to the date on which Moore filed a workers' compensation claim, Tuttle had been supportive and cooperative with Moore. She had realized that the Willimantic branch had been opened on a trial basis and that it might not succeed. She had never had criticism of Moore's job performance. After Moore filed her claim, she was demoted and then abruptly terminated effective the very day after a doctor had advised her to take a medical leave of absence from work. The termination of Moore's employment was ostensibly due to the abrupt decision by Tuttle to close the Willimantic Branch office. Tuttle had solicited the advice of the CCCS board of directors in determining to open the office. It seems incredible that she would decide to terminate the branch without some input from the board of directors if that decision was truly based on financial considerations. Moreover, the timing of Moore's medical leave and her termination are just too close in time to permit any inference other than that termination was CT Page 7059 directly related to Moore's exercise of her rights under the Workers' Compensation Act.
Based on the foregoing the court finds that Moore's employment was terminated in violation of Connecticut General Statutes § 31-290a.
The plaintiff failed to prove her case as to Count One of the complaint. There was no express contract of employment between her and CCCS. While it is true that Tuttle had advised Moore that CCCS intended that the Willimantic Branch would operate for at least a year, that advisement did not constitute an implied contract that CCCS would employ Moore for a year.
In the Third Count the plaintiff claims intentional infliction of emotional distress. That count was not briefed and the court will treat it as having been abandoned.
The plaintiff is entitled to recover damages on the Second Count. Connecticut General Statutes § 31-290 (b) provides in pertinent part:
 (b) Any employee who is so discharged or discriminated against may either: (1) Bring a civil action in the superior court for the judicial district where the employer has its principal office for the reinstatement of his previous job, payment of back wages and reestablishment of employee benefits to which he would have otherwise been entitled if he had not been discriminated against or discharged and any other damages caused by such discrimination or discharge. The court may also award punitive damages. Any employee who prevails in such a civil action shall be awarded reasonable attorney's fees and costs to be taxed by the court
The plaintiff is entitled to recover for lost wages and benefits. At the time of her termination, plaintiff's base salary was $33,000 per year. The calculation of lost wages would be:
1992 8.5 weeks $5,934.00
1993 base salary plus 4.5% increase $34,485.00
1994 base salary of $34,485 plus 5% increase[1] $36,209.00
 1995 base of $36,209 plus 4% increase[2] $25,104.00 $37,657 prorated to 8 mos
CT Page 7060
 Gross wage loss $101,732.00 interim earnings:
1992 unemployment benefits $5,000.00
1993 $3,400.00
1994 $10,000.00
1995 $17,000.00
total interim earnings $35,400.00
net wage loss $66,332.00
Managerial employees of CCCS received bonus payments of 10% per year. Since Moore had always received the maximum bonus and defendant offered no evidence to show that bonuses had been reduced, it is reasonable to infer that "but for" her illegal termination, Moore would have received a 10% bonus each year except for 1995 when she would not have remained employed at the end of the year.
1992 Bonus $3,300.00
1993 $3,448.00
1994 $3,620.00
Total Bonus lost $10,368.00
In addition to the bonus, under the Purchase Money Pension Plan, CCCS contributed 10% of wages to the pension plan each year. Since Moore would have been fully vested, she lost the 10% contribution. The total amount of pension loss is $12,472.00 which consists of ten percent of wages for the years 1992-1994 and ten percent of wages for 1995 prorated through September 1, 1995. Moore paid $280.00 per month under COBRA for health insurance after her termination. She is thus entitled to recover $1,680.00 for insurance benefits.
There was also undisputed evidence that CCCS reimbursed employees for one half of tuition costs. Therefore, Moore is also entitled to recover $1,100.00 in tuition reimbursement. CT Page 7061
Total economic damages:
Net back wages $66,332.00
Bonus payments $10,368.00
Pension benefits $12,472.00
Insurance $1,680.00
Tuition reimbursement $1,100.00
Total: $91,952.00
The plaintiff is also entitled to recover her attorneys fees under § 31-290 (b). The court awards the plaintiff $30,000 in attorneys fees based on her testimony that she entered into a fee agreement with her attorney under the terms of which she must pay the attorney one third of the amounts collected. The court further finds that the conduct of the defendant toward the plaintiff was sufficiently egregious to warrant the imposition of punitive damages in the amount of $20,000.
Judgment may enter in favor of the plaintiff on the Second Count of the Complaint in the amount of $141,952 plus costs. Judgment may enter in favor of the defendant on the First and Third Counts of the Complaint.
By the court,
Aurigemma, J.