**Lauren SIGNER, Plaintiff–Appellant,**

**v.**

**Kevin TUFFEY, Chief; Individually and in his official capacity, Jack Nielsen, Deputy Chief; Individually and in their official capacity, the City of Albany Police Department, Defendants–Appellees.**

No. 02–7102.

United States Court of Appeals, Second Circuit.

March 18, 2003.

Meredith H. Savitt, Hite & Savitt, P.C., Albany, NY, for Appellant.

John Liguori (Megan B. Van Aken, on the brief), Brennan, Rehfuss & Liguori, P.C., Albany, NY, for Appellees.

PRESENT: CALABRESI, POOLER, and SOTOMAYOR, Circuit Judges.

### *SUMMARY ORDER*

THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the United States Courthouse, Foley Square, in the City of New York, on the 18th day of March, two thousand and three.

UPON DUE CONSIDERATION of this appeal from a judgment of the United States District Court for the Northern District of New York (Kahn, J.), it is hereby ORDERED, ADJUDGED AND DECREED that the decision of the district court is VACATED AND REMANDED.

Plaintiff Lauren Signer appeals from an order of the United States District Court for the Northern District of New York (Kahn, J.) granting defendants' motion for summary judgment. Plaintiff alleges on appeal that defendants impermissibly retaliated against her, in violation of Title VII and N.Y. Exec. Law § 296, for complaining of sex discrimination.[1]

A district court's grant of a motion for summary judgment is reviewed *de novo*. *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 436 (2d Cir.1999). Summary judgment is warranted when there are no genuine issues of material fact to be tried. Fed.R.Civ.P. 56(c). All ambiguities must be resolved and all factual inferences must be drawn in plaintiff's favor as the nonmoving party. *Richardson*, 180 F.3d at 436. Accordingly, we accept the following facts as true for purposes of our consideration of whether summary judgment was proper.

Plaintiff joined the Albany Police Department ("APD") as a police officer in 1987. Plaintiff's husband, Michael Signer, also worked for the APD as a civilian dispatcher. In March 1997, plaintiff was promoted to the rank of Lieutenant. She subsequently became Director of the Community Service Unit ("CSU"), a position which included duties as the APD's Public Information Officer ("PIO").

In April 1998, the Chief of the APD, Kevin Tuffey ("Tuffey"), received a report that Michael Signer was upset at rumors of an affair between plaintiff and another APD employee, Commander William Bowen. Concerned about the possibility of a confrontation between Michael Signer and Bowen, Tuffey ordered an investigation into the situation. Plaintiff claims that on April 23, 1998, she complained to Tuffey about the investigation and alleged that she was being discriminated against because of her sex. In May 1998, plaintiff sent a written complaint to Tuffey through her union representative, again alleging that she was being discriminated against because of her sex. On June 10, 1998, plaintiff's lawyer faxed a letter to Tuffey, which stated in part: "As you know, for several weeks now, Lt. Lauren Signer has complained that she was the victim of sex discrimination and sexual harassment in connection with the investigation that took place during the week of April 13 and events thereafter."

On the same day that plaintiff's lawyer faxed this letter to Tuffey, plaintiff was informed that her office would be relocated to the sub-basement.[2] In December 1998, plaintiff learned of the APD's decision to separate the PIO duties from the CSU Director's responsibilities; the PIO title

---

1. Plaintiff does not appeal the district court's grant of defendants' motion for summary judgment on her discrimination, equal protection, due process, and tort claims.

2. The sub-basement, formally designated as a bomb shelter, was an undesirable office location containing only locker rooms, computer network facilities, and offices of "outreach officers" which were used primarily as changing rooms. One employee of the APD described the sub-basement as a place "far enough below ground [that] nobody ever wanted to come down there."

and duties were accordingly assigned to another officer. At the same time, plaintiff learned that the CSU officers under her command were being reassigned from her building to various other police stations, effectively reducing her duties as CSU Director. On December 11, 1998, plaintiff filed a complaint with the EEOC, alleging sex discrimination and retaliation.

In cases like the present, where there is no direct evidence of discrimination, we apply the three-part burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). A plaintiff must first demonstrate a prima facie case of retaliation, which a defendant may rebut by proffering a legitimate, nondiscriminatory reason for the employment action. *Id.; see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The plaintiff may then present evidence that the allegedly legitimate reason is actually a pretext for unlawful discrimination. *Hicks*, 509 U.S. at 507–08, 113 S.Ct. 2742.

To establish a prima facie case of retaliation, plaintiff must show (1) that she was engaged in protected activity; (2) that defendants were aware of that activity; (3) that plaintiff suffered an adverse employment action; and (4) that there was a causal connection between the protected activity and the adverse employment action. *See Collins v. N.Y. City Transit Auth.*, 305 F.3d 113, 118 (2d Cir.2002); *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir.1988). The burden of establishing this prima facie case in employment discrimination cases is "minimal." *Hicks*, 509 U.S. at 506, 113 S.Ct. 2742; *see also McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir.2001).

■ Plaintiff's complaints to Tuffey in April, May, and June 1998 each alleged that she was being discriminated against on the basis of her sex, and as such constitute Title VII protected activities. *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir.2000) ("[T]he law is clear that opposition to a Title VII violation need not rise to the level of a formal complaint in order to receive statutory protection...."); *Summer v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990) (holding that protected activities include "making complaints to management"). It is undisputed that defendants were aware of this protected activity.

Plaintiff presents as proof of adverse employment action that she was stripped of many of her CSU responsibilities, she lost her PIO title and duties, and her office was relocated. To be adverse, an employment action must involve the deprivation of "some 'tangible job benefits' such as 'compensation, terms, conditions or privileges' of employment." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir.2002) (quoting *Karibian v. Columbia Univ.*, 14 F.3d 773, 778 (2d Cir.1994)). Adverse employment actions are considered material if they are "of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." *Torres v. Pisano*, 116 F.3d 625, 632 (2d Cir.1997).

A reasonable juror could conclude that the reallocation of some of plaintiff's duties as CSU Director was an adverse employment action. The record shows that plaintiff's responsibilities decreased significantly after the CSU reorganization. In a letter Tuffey wrote in December 1998, he described the change as a "reallocat[ion]" of responsibilities "to each of the four stations," and noted that plaintiff would supervise the Community Service Officers ("CSOs") "with input from the Station Lieutenants." Prior to the reorganization, plaintiff had exclusive command over the

CSOs; it is thus reasonable to conclude that her responsibilities were diminished after the decentralization. Indeed, one CSO stated in his deposition that after the decentralization his interaction with Signer diminished to the point where he received only twenty percent of his assignments from her. Defendants' contention that the plaintiff's position as CSU Director was unchanged by the reorganization is further undermined by the fact that defendants never assigned anyone to her post following her departure in July 1999, and have stated that they do not plan to do so. A reasonable juror might conclude that if the CSU post had retained any significant responsibilities following the reorganization, a replacement for plaintiff would have been assigned.

Likewise, the reassignment of plaintiff's PIO duties could be considered an adverse employment action, because plaintiff was no longer in charge of a highly public position that had previously constituted a significant portion of her official duties.

It is also conceivable that, when considered together with the reduction in plaintiff's CSU responsibilities and the removal of her PIO duties, a reasonable juror could have concluded that the relocation of plaintiff's office was an adverse change in her employment conditions. After plaintiff complained about the proposed move of her office to the subbasement, she was moved instead to an out-of-the-way office next to the building's garbage collection area.

Finally, the causal connection requirement in establishing a prima facie case of retaliation is also met. Plaintiff's protected activity, which occurred in April, May, and June 1998, preceded the alleged adverse employment actions, which were threatened in June and occurred in December 1998. Given the limited burden a plaintiff must meet to establish a prima

facie case, this alone is sufficient to demonstrate a causal connection. *See Raniola v. Bratton*, 243 F.3d 610, 624 (2d Cir.2001) (explaining that the plaintiff's burden in establishing a prima facie case is "a light one, usually demanding only that the protected activity preceded the adverse action in order to satisfy the causation requirement"); *Manoharan*, 842 F.2d at 593 ("Proof of the causal connection can be established indirectly by showing that the protected activity was closely followed in time by the adverse action."); *Davis v. State Univ. of N.Y.*, 802 F.2d 638, 642 (2d Cir.1986).

We thus hold that the district court erred in finding that plaintiff had not established her prima facie case. The district court assumed that plaintiff's only protected activity was her EEOC complaint in December 1998, and then concluded that there could be no causal connection between that activity and the alleged adverse employment actions (which happened before the EEOC complaint was filed). The district court was mistaken in finding that plaintiff's only protected activity was her EEOC complaint—as noted above, plaintiff's actions in April, May, and June 1998 also constituted protected activity, and preceded the alleged adverse employment actions.

As plaintiff has established a prima facie case of retaliation, we move to the second step of the *McDonnell Douglas* test. Defendants can articulate a legitimate, nondiscriminatory reason for the allegedly adverse employment actions by presenting evidence that "*taken as true,* would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action[s]." *Hicks*, 509 U.S. at 509, 113 S.Ct. 2742. Defendants' assertion that their actions were taken in accordance with a "department wide plan to decentralize [that] had been discussed, planned and

had begun to be implemented in 1997" is sufficient to present a legitimate nondiscriminatory reason.

■ The burden then shifts back to plaintiff to present evidence that the allegedly legitimate reason is actually pretextual. We find that plaintiff has presented evidence sufficient for a reasonable jury to find that defendants' allegedly nondiscriminatory explanations are merely pretext. While the record shows that a study committee was convened in 1997 to look into possible departmental reorganization, and that reorganization of the CSU may have been *discussed* in this study committee, there is no evidence that it was actually planned or initiated then.[3] And while the CSU reorganization letter from Tuffey does state that the department intended to "reallocate the responsibilities for community relations and crime prevention to each of the four stations in furtherance of our Community Policing plans," this letter is dated December 1998, and thus cannot prove that the CSU reorganization was initiated in 1997. Indeed, in his deposition testimony Tuffey stated plainly that he only began to consider reorganizing the CSU in "May or June of [19]98," which is *after* plaintiff's initial complaint of discrimination in April 1998.

Defendants contend that the physical relocation of plaintiff's office was made "concurrent with other steps taken to decentralize the police department," and that following the decentralization of the CSU it made sense to move plaintiff into a smaller office. However, this does not explain why defendants sought to move plaintiff's office in June 1998, prior to the December 1998 CSU reorganization. Furthermore, even if there was a concurrent reorganization underway, it is certainly possible that defendants may have used that reorganization as pretext for moving plaintiff's office to an unfavorable location.

Regarding the removal of plaintiff's PIO duties, defendants contend that they wanted to revamp the PIO position by separating it from the CSU and making it a full-time position, in order to make sure that all of the PIO responsibilities were being carried out effectively. But there is no evidence that defendants ever previously expressed concern about plaintiff's ability effectively to carry out all the responsibilities of the PIO position; to the contrary, Tuffey himself stated that he had no concerns with the way plaintiff handled her duties. More importantly, the manner in which defendants reassigned the PIO position suggests a retaliatory motive. Despite Tuffey's statement that the motive for the reassignment was to make the PIO a full-time position held by a police officer, plaintiff's replacement in the position held the rank of detective and did not work exclusively on PIO assignments. Plaintiff herself was never offered the chance to apply for the new PIO position, and after her replacement assumed the post, the job requirements were revised to match his rank and qualifications. A jury could find that these factors indicate that the PIO reassignment was improvised and not, as defendants claim, carefully planned.

For all of these reasons, we conclude that serious issues of fact remain on plaintiff's claim of retaliation, and summary judgment for defendants was improper. Construing the factual evidence most fa-

---

**3.** Asked whether the study committee had reached any conclusion regarding the CSU, Assistant Chief William Georges responded: "I'm not sure, to be perfectly honest with you—although it would be in the report—I'm not sure what the final determination was."

(The report to which Georges refers was not preserved for discovery.) When asked a variation of the same question, Georges answered, "I don't recall what the conclusion was. Actually, I know there was a difference of opinion of the Board."

vorably to plaintiff, as we are required to do, we find that there is sufficient basis for a jury to find that plaintiff suffered adverse employment actions and that defendant's proffered nondiscriminatory explanations were pretextual. We VACATE the district court's grant of defendants' motion for summary judgment, and REMAND for further proceedings.