**Joseph L. RAINONE, Plaintiff,**

v.

**John E. POTTER, Postmaster General, Defendant.**

No. 04–CV–05405 (ADS).

United States District Court, E.D. New York.

March 4, 2005.

Joseph L. Rainone, Baldwin, NY, Pro Se, Plaintiff.

ROslynn R. Mauskopf, United States Attorney, By Vincent Lipari, Assistant United States Attorney, Of Counsel, Central Islip, NY, for the Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

*Pro Se* plaintiff Joseph L. Rainone ("Rainone" or the "Plaintiff") filed this discrimination action against his employer, the Postmaster General of the United States Postal Service ("USPS" or the "Defendant") claiming that he was not promoted due to his gender and in retaliation for protected activity. The Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, the motion is denied.

## BACKGROUND

The following facts are taken from the parties' statement of disputed and undisputed material facts and the accompanying affidavits, depositions, and other evidentiary material. The Plaintiff worked at USPS from March 24, 1972 to June 17, 1999, a period of more than 27 years. In January 1987, Rainone was promoted to the position of Material Management Specialist. In February 1993, due to a nationwide reduction in force and reorganization, the Plaintiff's was required to re-apply for his position and was subsequently not selected to be a Material Management Specialist by Alfred Fassler ("Fassler"), his supervisor at the time.

On June 1, 1993, Rainone filed a complaint with the Equal Employment Opportunity Commission ("EEOC") claiming that Fassler had denied his re-application because of discrimination against him on the basis of gender. On August 1, 1994, the USPS adopted the Administrative Law Judge's findings and conclusions and dismissed the Plaintiff's claim of discrimination. On December 12, 1994, the Plaintiff filed a complaint in federal district court, *Rainone v. Fassler and United States*

*Postal Service,* No. CV 94–5986 (E.D.N.Y.). On February 26, 1996, the action was voluntarily dismissed by Rainone.

On February 22, 1996, the Plaintiff commenced a second action, *Rainone v. Fassler and United States Postal Service,* No. CV 96–0790 (E.D.N.Y.), alleging that his non-selection violated his Constitutional rights. By Memorandum of Decision and Order dated January 4, 1997, this Court granted summary judgment and dismissed the complaint.

From 1993 to 1999, Rainone was a supervisor in the USPS's Long Island Computer Forwarding Service ("CFS"). CFS forwards mail to persons who have changed their addresses. In May 1999, Rainone applied for the position of Manager of Computerized Mail Forwarding Operations ("CMFO"), a newly created position. The Manager of CMFO was to oversee all CMFO operations in the Long Island District, which would include managing supervisors, overseeing productivity, and maintaining good relationships among those who worked at the CMFO and between the CMFO and entities that interacted with it. John Lunghi, Sr. ("Lunghi"), the Manager for Operations Programs Support for the Long Island District, was the selecting official for the position. As part of his job, one of Lunghi's duties was to oversee the CMFO and other postal operations.

Rainone was interviewed for the position along with two other applicants, Diane D'Orazio ("D'Orazio") and Richard Parker ("Parker"), who were both supervisors of Customer Services. Lunghi selected D'Orazio and the District Manager, Thomas Rosatti, concurred in that decision. In his affidavit, Lunghi detailed the reasons underlying his selection, stating that he "had minimal knowledge of [either candidates] careers." In selecting D'Orazio, Lunghi stated:

> The reason I selected Ms. D'Orazio over Mr. Rainone was that I felt that she had better management skills than Mr. Rainone did. In making this determination I relied primarily on the PS Forms 991 submitted by the candidates.... I did not consult with anyone else in making the selection, or look at any additional materials.

Def.'s Ex. U. Lunghi also explained how he felt that D'Orazio had greater experience; a significant amount of relevant training; provided exemplary answers to interview questions; and stated her willingness to work additional hours.

On the other hand, Lunghi was less impressed with Rainone's application and his performance during the interview. In addition, Lunghi stated that he considered additional factors outside of the application with regard to Rainone, for example Lunghi stated that Rainone:

> had already demonstrated that he would not put in the time, or have the flexibility, needed to perform well in this position. On two or three occasions between December of 1998, when I first began managing CMFO, and May 1999, when I made my selection, I approached Mr. Rainone to request that he work on weekends, change his schedule slightly, and work longer hours on a given day. Mr. Rainone consistently refused to do so, with no explanation.

Def.'s Ex U.

The Plaintiff claims that Lunghi was influenced by two individuals in making the selection, namely, Fassler who was retaliating against Rainone, and Linda Balestrieri ("Balestrieri"), a women who had at times supervised Rainone in some capacity. Fassler was a District Manager that worked with Lunghi. The Plaintiff claims that Fassler had an intense hatred

of him dating back to his EEOC activity. In a deposition of Kathy Bolan, a co-worker of the Plaintiff, it is alleged that Fassler once stated to his secretary, Kathy Fazzari, "he'll never get that [Manager] position." Plt. Ex 13 at 39. The Plaintiff claims that Lunghi was a close ally of Fassler and that he persuaded him not to select Rainone as a Manager.

Linda Balestrieri was a Manager that worked under Lunghi and had ties to D'Orazio and Parker. Part of Balestrieri's job was to supervise some of Rainone's duties and report on the condition of CFS to Lunghi. Through this connection, it is alleged that Balestrieri had direct contact with Lunghi and the ability to influence him. An email provided by the Plaintiff dated February 24, 1999, reveals a discussion about an incident that occurred at CFS between Rainone and Balestrieri in which she states, "I will share your response with Mr. Lunghi."

Balestrieri had ties to both candidates seeking the Manager position. Parker was Balestrieri's cousin. Balestrieri was a friend or "strong ally" of D'Orazio. Rainone provided a deposition from a co-worker that stated the ratio of women to men in CFS at the time he was not promoted was 25:1. Plt Ex 21 at 7. Rainone alleges that

> [i]t is quite obvious to anyone who knows [Balestrieri] and [D'Orazio], and is aware of even a little bit of facts, that [Balestrieri] wanted the CFS operation for her friend and an additional place of refuge for herself. What better way to reward yourself and a "like-friend" at my (male) expense....
>
> Simply put, [Fassler] asked the favor. [Balestrieri] had the solution. [Lunghi] obliged.

Def.'s 56.1 Statement ¶ 17.

Lunghi, Balestrieri, and Fassler all deny discussing the selection of the position at all. It is with this backdrop that the Court will analyze the motion by the Defendant for summary judgment.

## DISCUSSION

### I.  The Summary Judgment Standard

A motion for summary judgment should be granted only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c);  see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2550, 91 L.Ed.2d 265 (1986). The moving party bears the burden of establishing the absence of a genuine issue of material fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). "When a movant demonstrates through competent evidence that no material facts are genuinely in dispute, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir.1990) (quoting Fed. R.Civ.P. 56(e)). "The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." Id. (internal quotations and citations omitted); see Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir.1998).

In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and must draw all permissible inferences from the submitted affidavits, exhibits, interrogatory answers, and depositions in favor of that party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 155, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986); Vann v. City of New York, 72 F.3d 1040, 1048–49 (2d Cir.1995). Disputed facts that are not material to the issue at hand will

not defeat summary judgment. *See Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of judgment." *Id.* A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Notably, "the trial court's task at the summary judgment motion state of litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to decide them. Its duty, in short, is confined at this point to issue-finding, it does not extend to issue resolution." *Gallo v. Prudential Residential Servs. Ltd.,* 22 F.3d 1219, 1224 (2d Cir.1994); *see Donahue v. Windsor Locks Board of Fire Commissioners,* 834 F.2d 54, 57 (2d Cir.1987) (holding that on a motion for summary judgment, the court "cannot try issues of fact; it can only determine whether there are issues to be tried").

## II. Failure to Promote

■ To establish a prima facie case of a discriminatory failure to promote, a Title VII plaintiff must ordinarily demonstrate that (1) he is a member of a protected class; (2) he applied and was qualified for a job for which the employer was seeking applicants; (3) he was rejected for the position; and (4) the denial occurred under circumstances giving rise to an inference of discrimination on a basis forbidden by Title VII. *Petrosino v. Bell Atlantic,* 385 F.3d 210, 226 (2d Cir.2004); *Howley v. Town of Stratford,* 217 F.3d 141, 150 (2d Cir.2000); *Brown v. Coach Stores, Inc.,* 163 F.3d 706, 709 (2d Cir.1998) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). "The burden that such a plaintiff must meet in order to defeat summary judgment at the prima facie stage is 'not onerous,' and has been described as 'de minimis.'" *Howley,* 217 F.3d at 150 (quoting *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) and *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 37 (2d Cir.1994)). Here, the Defendant only disputes the fourth element, contending that the Plaintiff cannot show that the denial occurred on a basis forbidden by Title VII, namely, gender or retaliation.

### A. Gender Discrimination

■ In order "to establish a claim of . . . gender discrimination under Title VII, a claimant must show that: (1) he belonged to a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Terry v. Ashcroft,* 336 F.3d 128, 138 (2d Cir.2003); *Collins v. New York City Transit Auth.,* 305 F.3d 113, 118 (2d Cir.2002). The Defendant contends that Rainone cannot present any evidence that Lunghi was influenced by Balestrieri in his decision to select D'Orazio.

In discriminatory-treatment cases, courts employ the well-known *McDonnell Douglas* framework to allocate the burden of production and the presentation of proof. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson*

*Plumbing Products, Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000) (quoting *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089). The Defendant has offered a non-discriminatory reason for promoting D'Orazio instead of the Plaintiff. Lunghi's affidavit presents a sound basis for the Defendant's case, namely, that she was more qualified for the managerial aspect of the job due to her training, work experience, and the way she conducted herself in the interview. However, the reasons set forth in the affidavit do not end the Court's inquiry.

The "plaintiff may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence.'" *Reeves*, 530 U.S. at 143, 120 S.Ct. 2097 (quoting *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089). Here, it appears Lunghi's own affidavit may be contradictory. Lunghi states that he primarily relied on the applications of the candidates and that he had little knowledge of either candidate before the application process. But in another paragraph of the affidavit he spells out how he considered material outside the application and interview with regard to Rainone. Lunghi states that he already knew that Rainone would not have the flexibility required for the Manager's position because of prior interactions. Lunghi's statement that he hardly had any contact with Rainone is squarely contradicted by his detailed description of his interaction with Rainone regarding working overtime.

In addition, the *pro se* Plaintiff produced circumstantial evidence casting doubt on Lunghi's assertion that he never discussed the candidates with anyone, in the form of an email that directly links an incident involving Balestrieri, the Plaintiff, and Lunghi. Although the email is not proof that Balestrieri and Lunghi discussed the position, it further contradicts Lunghi's position that he had little knowledge of Rainone prior to the application process. As instructed by the Supreme Court, "[p]roof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." *Reeves*, 530 U.S. at 147, 120 S.Ct. at 2108.

■ Also important is the fact that Balestrieri was closely associated with the only other applicants competing for the position. Allegedly, Parker was a cousin of Balestrieri and D'Orazio was a close friend of Balestrieri. Rainone also alleges that D'Orazio was Balestrieri's protege. These connections, coupled with the fact that Balestrieri and Lunghi appeared to have discussed operations at CFS, and specifically discussed Rainone's performance, is sufficient to permit a jury to infer that Lunghi's decision was influenced by a discriminatory motive. Notably, the Defendant has not attached a deposition or affidavit of Balestrieri for the Court to examine the allegations that she potentially influenced Lunghi in this case. The Court finds that the *pro se* Plaintiff should have the opportunity to present evidence that Balestrieri may have.

Another piece of circumstantial evidence lending support to the Plaintiff's gender discrimination claim is the fact that the ratio of women to men in the CFS at the time of the incident appears, according to one deponent, to be 25 to 1. This evidence, in conjunction with the other facts presented by the Plaintiff, may allow a jury to reasonably infer that there was a pattern of gender bias operating within the CFS. *See, e.g., Sorlucco v. New York City Police Dept.*, 971 F.2d 864, 872 (2d Cir.1992) (stating that small statistical evidence in conjunction with other evidence indicative

of bias is sufficient to support an inference of discriminatory practice).

## B. Retaliation

In order to "establish a prima facie case of retaliation, an employee must show '(1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action.'" *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir.1998) (quoting *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1308 (2d Cir.1995)); *see also Feingold v. New York*, 366 F.3d 138, 156 (2d Cir.2004). The Defendant contends that the third prong, causation, cannot be proven because the protected activity occurred six years ago, when Rainone filed his EEOC complaint involving Fassler. It is true that a causal connection "can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." *Manoharan v. Columbia University College of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir.1988). However, the causal connection can also be established "directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Knight v. City of New York*, 303 F.Supp.2d 485, 496 (S.D.N.Y.2004) (quoting *Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir.2000)).

In this case, the Plaintiff has adduced evidence of retaliatory animus directed against the plaintiff by the Defendant. In a deposition of co-worker Kathy Boylan, who spoke often with Fassler's secretary, Kathy Fazzari, Ms. Boylan stated that the Manager position that Rainone applied for was discussed by Fassler. Ms. Boylan also stated that Ms. Fazzari would "air her feelings that Fassler was not fond of [Rainone]" to her. Ms. Boylan also admitted that Fassler said that "[Rainone] will never get that position." With reasonable certainty, this statement of personal animus could have been related to the Plaintiff's prior EEOC activity because the record reveals that Fassler and Rainone had little interaction between the time of the prior EEOC activity and Rainone's application for the Manager's position. Rainone also alleges that Fassler's office was immediately next to Lunghi's office.

In sum, Rainone alleges that (1) Fassler had a personal animus against him; (2) this personal animus was related to his prior EEO activity; (3) Fassler discussed the possibility of him becoming a manager; and (4) Fassler's office was near Lunghi's office. Assuming all of these facts are true, a reasonable jury could infer that prior to the selection, Fassler and Lunghi discussed issues regarding Rainone's employment, which may have included the lawsuit against Fassler. *See, e.g., Ghirardelli v. McAvey Sales & Service, Inc.*, 287 F.Supp.2d 379, 388 (S.D.N.Y.2003). Thus, a reasonable jury could find that Lunghi's decision was influenced by Fassler's retaliatory animus, a basis prohibited by Title VII. Accordingly, the Court is persuaded that Rainone has satisfied his burden with regard to his retaliation claim.

Therefore, the Court finds that the Defendant has presented issues of material fact sufficient to defeat the Defendant's motion for summary judgment.

## CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that the motion by the Defendant for summary judgment is hereby **DENIED** in its entirety; and it is further

**ORDERED**, that all parties are directed to appear for jury selection in Courtroom 1020, Long Island Federal Courthouse,

Central Islip, New York on Monday, April 25, 2005 at 9:00 a.m.

**SO ORDERED.**